# SERIES MANAGEMENT AND ADMINISTRATIVE SERVICES AGREEMENT

This Series Management and Administrative Services Agreement ("Agreement") is entered into between Neighbors Health System, Inc., a Texas corporation ("Manager") and Series 110 - Crosby of NHS Emergency Centers, LLC, a Texas limited liability company (the "Company"), to be effective as of the 21st day of July, 2014 ("Effective Date").

### Recitals:

WHEREAS, the Company operates an emergency medical clinic facility (hereafter the "Company Business");

WHEREAS, the Company desires to obtain management services and administrative support from Manager on the terms set forth herein and Manager desires to fulfill the engagement.

NOW, THEREFORE, the Company and Manager, for good and valuable consideration, the receipt and sufficiency of which are duly acknowledged, agree as follows:

1. **Engagement of Manager**

The Company hereby engages Manager to provide management for the Company, subject to the terms and conditions set forth herein.

   a. Manager will perform management services in accordance with the policies, procedures, rules and directives as adopted and amended by the Company and will answer directly to the Company.

   b. The management services to be delivered by Manager shall include, without limitation, the day to day management of the Company, the Administrative Services outlined in Section 2 of this Agreement, and such additional services as shall be necessary and appropriate to provide for the operation of the Company's business without interruption.

   c. Manager shall perform its services hereunder, including the Administrative Services, in compliance with the requirements of all applicable federal, state, regional and local laws, rules, regulations and orders, including those applicable to the provision of services to patients covered by federal health care programs.

**EXHIBIT 3**

2. **Management and Administrative Services**

The administrative services to be provided by Manager hereunder shall be sufficient to support the Company's ongoing business operations in all respects, including, without limitation, the following:

a. <u>Staffing and Human Resources</u>. The Manager and its affiliates shall have the sole responsibility for hiring, firing and supervising all non-professional employees, shall administer payroll and benefits, provide necessary employee training and certification, and shall maintain personnel records in compliance with state and federal laws.

b. <u>Accounting</u>. Manager will supervise and manage all accounting, including tax compliance and tax return preparation, accounts payable administration, billing and collection services of the Company.

c. <u>Financial Planning and Forecasting</u>. Manager will create, implement and review annual budgets for the Company. Manager will be responsible for taking all actions that Manager deems necessary to implement the approved budget.

d. <u>Cash Management, Banking and Treasury</u>. Manager, as agent of the Company, will maintain bank accounts, and shall both have the right to make deposits and withdrawals from any such bank account in connection with operations of the Company. Manager will not have the authority to borrow money or execute any promissory notes on Company's behalf without the consent of the Company.

e. <u>Administer Insurance Programs</u>. Manager will maintain policies of general liability, premises liability and any other insurance that it deems appropriate to insure Manager, the Company, and Manager's employees and agents against any liability resulting from manager or Manager's employees' acts or omissions during the Term of this Agreement.

f. <u>Executive Operations Management</u>. Manager will advise the Company as to any equipment needs, maintenance or operational issues that are necessary for the continued operation of the Company. Manager will be responsible for negotiating and preparing service contracts and developing managed care contracts that Manager deems necessary for the operation of the Company.

g. <u>Marketing</u>. Manager will create, implement and administer marketing programs for the Company. Manager will be responsible for taking all actions that Manager deems necessary to deliver and communicate the Company's services to the community.

h. <u>Branding</u>. Manager, as agent of the Company, will be responsible for maintaining and implementing the name, logo, slogan and/or design scheme associated with the Company; provided, however, that it is understood that all intellectual property will be the property of Neighbors Emergency Center, LLC.

i. <u>Information Technology</u>.  Manager will supervise and manage the application and utilization of computers and telecommunications equipment to store, retrieve, transmit and manipulate the Company's data.

j. <u>Facilities Management Oversight</u>.  Manager shall have the sole responsibility of providing oversight of the Company's infrastructure, instrumentation and equipment. Manager will create, implement and review the policies, procedures and requirements for properly and adequately maintaining and managing the Company's emergency center. The Manager shall identify and manage appropriate vendor relationships for supplies and equipment.

k. <u>Policies and Procedures</u>.  Manager will create, implement and review policies and procedures for the operation of the Company Business and the sound administration of the Company's facilities.

l. <u>Licensure</u>.  Manager shall have the sole responsibility of taking all actions and performing all services that Manager deems necessary to ensure that all licenses held by the Company are properly maintained in good standing.

m. <u>Compliance Training</u>.  Manager shall have the sole responsibility of taking all actions to ensure the Company's employees are properly educated on the laws, regulations and policies that apply to their day-to-day job responsibilities.  Manager will be responsible for taking all actions that Manager deems necessary to provide training to the Company's employees on workplace discrimination and harassment, dealings with competitors, protecting trade secrets, record management, IT and all areas of professional competence.

n. Such other services as shall be (i) reasonably related to those specific services set forth above, or (ii) reasonably necessary, at Manager's sole discretion, to support the Company's operations.

(the foregoing referred to collectively as the "Administrative Services").  The Company agrees to provide Manager with access to, and/or copies of, the Company's business information sufficient to enable Manager's personnel to perform the Administrative Services.  Manager agrees that all such information relating to the Company's business shall be treated as strictly confidential and shall not be disclosed to any person absent the Company's advance written consent except as may be necessary for Manager's accounting, tax preparation and financial reporting purposes.

3. <u>Manager's authority to undertake specific actions shall be subject to such restrictions, consent requirements and/or limitations as are set forth in the Series Agreement of the Company from time to time.</u>

4. **<u>Fees and Expenses</u>**

a. The Company and Manager agree to meet and determine an appropriate monthly fee for Manager's services hereunder.  The parties agree that the monthly fee shall be reviewed

**EXHIBIT 3**

and adjusted on a month-to-month basis to reflect the expenditure of time and resources required of Manager to adequately perform the services.

b. The Company shall reimburse Manager's reasonable out of pocket expenses incurred in connection with the performance of Manager's services under this Agreement, subject to Manager's provision of appropriate documentation for such expenses.

5. **Term**

This Agreement shall become effective on the Effective Date and shall remain effective thereafter for as long as the Company operates the Company Business, unless (i) terminated by either party by giving advance written notice to the non-terminating party not less than ninety (90) days prior to the next succeeding anniversary of the Effective Date (in which case, the Agreement shall remain in full force and effect until the next succeeding anniversary of the Effective Date), or (ii) terminated by the written agreement of the parties, or (iii) terminated for cause in accordance with Section 6 of the Business Agreement attached hereto as <u>Exhibit A</u>.

6. **Indemnification**

The Company agrees to indemnify Manager, and hold Manager and its officers, directors, shareholders, employees and representatives harmless from any and all claims, losses and liabilities of all descriptions arising during the Term of this Agreement and relating to (i) any claim for property damage, personal injury and/or wrongful death caused in whole or in part by any act or omission of the Company, (ii) any agreement, written or verbal, to which the Company is a party, including any agreement entered into on behalf of the Company by Manager, (iii) the Company's business liabilities, and (iv) any breach by the Company of any term of this Agreement; excluding, however, any claim, loss or liability arising as a result of (a) Manager's sole negligence or (b) any breach by Manager of any term of this Agreement.

7. **Relationship of the Parties**

Manager is and shall remain an independent contractor. Manager is solely responsible for any withholding taxes as may be required under federal, state and local laws. The execution and performance of this Agreement shall not endow Manager with any ownership interest or profit participation in or to the Company. Nothing in this Agreement will require either party to refer any patients to the other party. Manager and the Company agree that (i) Manager shall have no control or authority over the delivery of medical services by Company, if any, (ii) Manager and the Company shall not be and are not intended by their execution of this Agreement to become, partners, members, shareholders, affiliates, associates, parent or subsidiary to one another, and (iii) the relationship of the parties is purely contractual and does not establish any agency, fiduciary or other type of relationship except as specifically provided for herein.

**EXHIBIT 3**

8. **Miscellaneous**

   a. <u>Controlling Law</u>. The interpretation and enforcement of this Agreement shall be governed by the internal laws of the State of Texas.

   b. <u>Confidentiality</u>. Manager shall take all reasonable efforts to maintain the confidentiality of all of the Company's confidential or proprietary business information.

   c. <u>Business Records</u>. The Company's business records, books of account, limited liability company records and other proprietary files shall remain at all times the property of the Company, and the Company and its Members shall have full access to all such records and files at all times.

   d. <u>No Assignment</u>. This Agreement and the parties' respective rights, duties, obligations and entitlements arising hereunder, shall not be assigned except pursuant to a written agreement signed by the Company and Manager.

   e. <u>Authorization</u>. The Company and Manager represent and warrant, one to another, that the execution of this Agreement by their undersigned representative and the performance of all obligations arising hereunder have been duly authorized by all necessary corporate actions.

   f. <u>No Third Party Beneficiaries</u>. There are no third parties intended to be beneficiaries of any obligation or right assumed by Manager or the Company under this Agreement.

   g. <u>HIPPA</u>. Manager and the Company have executed a business associate agreement attached hereto as <u>Exhibit A</u>.

SIGNED to be effective as of the Effective Date:

"MANAGER:" NEIGHBORS HEALTH SYSTEM, INC.

By: _____
    Setul Patel, President

"THE COMPANY:" NHS Emergency Centers, LLC Series 110 - Crosby

By: _____
    Setul Patel, President of
    Neighbors Health System, Inc., its Manager

**EXHIBIT 3**

## EXHIBIT A

## BUSINESS ASSOCIATE AGREEMENT

This Business Associate Agreement ("Agreement") is entered into between NHS Emergency Centers, LLC Series 110 – Crosby ("Covered Entity"), and Neighbors Health System, Inc., a Texas corporation ("Business Associate"), to be effective as of the 21st day of July, 2014 ("Effective Date").

WHEREAS, the Covered Entity is a covered entity, as such term is defined under HIPAA, and as such is required to comply with the requirements thereof regarding the confidentiality and privacy of Protected Health Information; and

WHEREAS, Business Associate has entered into an agreement with Covered Entity pursuant to which Business Associate will provide Covered Entity with management services and administrative support; and

WHEREAS, by providing the management services and administrative support, Business Associate shall become a business associate of Covered Entity;

NOW, THEREFORE, the Covered Entity and Business Associate, for good and valuable consideration, the receipt and sufficiency of which are duly acknowledge, agree as follows:

1. **Definitions (alternative approaches)**

   a. <u>Catch-all definition:</u>

   Terms used, but not otherwise defined, in this Agreement shall have the same meaning as those terms in the Privacy Rule.

   b. <u>Business Associate.</u> "Business Associate" shall mean Neighbors Health System, Inc.

   c. <u>Covered Entity.</u> "Covered Entity" shall have the meaning set forth in the introductory paragraph above.

   d. <u>Individual.</u> "Individual" shall have the same meaning as the term "individual" in 45 CFR § 160.103 and shall include a person who qualifies as a personal representative in accordance with 45 CFR § 164.502(g).

   e. <u>Privacy Rule.</u> "Privacy Rule" shall mean the Standards for Privacy of Individually Identifiable Health Information at 45 CFR Part 160 and Part 164, Subparts A and E.

   f. <u>Protected Health Information.</u> "Protected Health Information" shall have the same meaning as the term "protected health information" in 45 CFR § 160.103, limited to the information created or received by Business Associate from or on behalf of Covered Entity.

## EXHIBIT 3

g. <u>Required By Law.</u>  "Required By Law" shall have the same meaning as the term "required by law" in 45 CFR § 164.103.

h. <u>Secretary.</u> "Secretary" shall mean the Secretary of the Department of Health and Human Services or his designee.

2. **<u>Obligations and Activities of Business Associate</u>**

   a. Business Associate agrees to not use or disclose Protected Health Information other than as permitted or required by the Agreement or as Required By Law.

   b. Business Associate agrees to use appropriate safeguards to prevent use or disclosure of the Protected Health Information other than as provided for by this Agreement.

   c. Business Associate agrees to mitigate, to the extent practicable, any harmful effect that is known to Business Associate of a use or disclosure of Protected Health Information by Business Associate in violation of the requirements of this Agreement.

   d. Business Associate agrees to report to Covered Entity any use or disclosure of the Protected Health Information not provided for by this Agreement of which it becomes aware.

   e. Business Associate agrees to ensure that any agent, including a subcontractor, to whom it provides Protected Health Information received from, or created or received by Business Associate on behalf of Covered Entity agrees to the same restrictions and conditions that apply through this Agreement to Business Associate with respect to such information.

   f. Business Associate agrees to provide access within five (5) business days of a written request by Covered Entity to Protected Health Information in a Designated Record Set, if any, to Covered Entity or, as directed by Covered Entity, to an Individual in order to meet the requirements under 45 CFR § 164.524.

   g. Business Associate agrees to make any amendment(s) to Protected Health Information in a Designated Record Set, if any, that the Covered Entity directs or agrees to pursuant to 45 CFR 164.526 within five (5) business days of a written request by Covered Entity.

   h. Business Associate agrees to make internal practices, books, and records, including policies and procedures and Protected Health Information, relating to the use and disclosure of Protected Health Information received from, or created or received by Business Associate on behalf of, Covered Entity available to the Covered Entity within five (5) business days of a written request by Covered Entity, for purposes of determining Covered Entity's compliance with the Privacy Rule.

   i. Business Associate agrees to document such disclosures of Protected Health Information and information related to such disclosures as would be required for Covered Entity to

**EXHIBIT 3**

respond to a request by an Individual for an accounting of disclosures of Protected Health Information in accordance with 45 CFR § 164.528. In the event of a disclosure, Business Associate shall provide Covered Entity with the following information: (i) the date of the disclosure; (ii) the name of the entity or person who received the Protected Health Information, and if known, the address of such entity or person; (iii) a brief description of the Protected Health Information disclosed; and (iv) a brief statement of the purpose of such disclosure.

j. Business Associate agrees to provide to Covered Entity or an Individual, within two (2) business days of a written request by Covered Entity, information collected in accordance with Section 2i of this Agreement, to permit Covered Entity to respond to a request by an Individual for an accounting of disclosures of Protected Health Information in accordance with 45 CFR § 164.528.

3. **Permitted Uses and Disclosures by Business Associate**

   a. Except as otherwise limited in this Agreement, Business Associate may use Protected Health Information for the proper management and administration of the Business Associate or to carry out the legal responsibilities of the Business Associate.

   b. Except as otherwise limited in this Agreement, Business Associate may disclose Protected Health Information for the proper management and administration of the Business Associate, provided that disclosures are Required By Law, or Business Associate obtains reasonable assurances from the person to whom the information is disclosed that it will remain confidential and used or further disclosed only as Required By Law or for the purpose for which it was disclosed to the person, and the person notifies the Business Associate of any instances of which it is aware in which the confidentiality of the information has been breached.

   c. Except as otherwise limited in this Agreement, Business Associate may use Protected Health Information to provide Data Aggregation services to Covered Entity as permitted by 45 CFR § 164.504(e)(2)(i)(B).

   d. Business Associate may use Protected Health Information to report violations of law to appropriate Federal and State authorities consistent with § 164.502(j)(1).

4. **Obligations of Covered Entity**

   a. Covered Entity shall notify Business Associate of any limitation(s) in its notice of privacy practices of Covered Entity in accordance with 45 CFR § 164.520, to the extent that such limitation may affect Business Associate's use or disclosure of Protected Health Information.

**EXHIBIT 3**

b. Covered Entity shall notify Business Associate of any changes in, or revocation of, permission by Individual to use or disclose Protected Health Information, to the extent that such changes may affect Business Associate's use or disclosure of Protected Health Information.

c. Covered Entity shall notify Business Associate of any restriction to the use or disclosure of Protected Health Information that Covered Entity has agreed to in accordance with 45 CFR § 164.522, to the extent that such restriction may affect Business Associate's use or disclosure of Protected Health Information.

5. **Permissible Requests by Covered Entity**

Covered Entity shall not request Business Associate to use or disclose Protected Health Information in any manner that would not be permissible under the Privacy Rule if done by Covered Entity.

6. **Term and Termination**

   a. **Term.** The Term of this Agreement shall be effective as of the 1st day of January, 2014 and shall terminate upon the termination or expiration of the Management and Administrative Services Agreement and when all of the Protected Health Information provided by Covered Entity to Business Associate, or created or received by Business Associate on behalf of Covered Entity, is destroyed or returned to Covered Entity, or, if it is infeasible to return or destroy Protected Health Information, protections are extended to such information, in accordance with the termination provisions in this Section.

   b. **Termination for Cause.** Upon Covered Entity's knowledge of a material breach by Business Associate, Covered Entity shall either:

      i. Provide an opportunity for Business Associate to cure the breach or end the violation and terminate this Agreement if Business Associate does not cure the breach or end the violation within ten (10) business days of Business Associate's receipt of notice from Covered Entity of the breach;

      ii. Immediately terminate this Agreement and the Management and Administrative Services Agreement if Business Associate has breached a material term of this Agreement and cure is not possible; or

      iii. If neither termination nor cure is feasible, Covered Entity shall report the violation to the Secretary.

   c. **Effect of Termination.**

      i. Except as provided in Paragraph b of this Section 6, upon termination of this Agreement, for any reason, Business Associate shall return or destroy all Protected Health Information received from Covered Entity, or created or received by Business

**EXHIBIT 3**

Associate on behalf of Covered Entity. This provision shall apply to Protected Health Information that is in the possession of subcontractors or agents of Business Associate. Business Associate shall retain no copies of the Protected Health Information.

ii. In the event that Business Associate determines that returning or destroying the Protected Health Information is infeasible, Business Associate shall provide to Covered Entity notification of the conditions that make return or destruction infeasible. In any such event, Business Associate shall immediately extend the protections of this Agreement to such Protected Health Information and limit further uses and disclosures of such Protected Health Information to those purposes that make the return or destruction infeasible, for so long as Business Associate maintains such Protected Health Information.

7. **Miscellaneous**

   a. Regulatory References. A reference in this Agreement to a section in the Privacy Rule means the section as in effect or as amended.

   b. Amendment. The Parties agree to take such action as is necessary to amend this Agreement from time to time as is necessary for Covered Entity to comply with the requirements of the Privacy Rule and the Health Insurance Portability and Accountability Act of 1996, Pub. L. No. 104-191.

   c. Survival. The respective rights and obligations of Business Associate under Section 6c of this Agreement shall survive the termination of this Agreement.

   d. Interpretation. Any ambiguity in this Agreement shall be resolved to permit Covered Entity to comply with the Privacy Rule.

SIGNED to be effective as of the Effective Date: July 21, 2014

NEIGHBORS HEALTH SYSTEM, INC., Business Associate

By: _____
   Setul Patel, President

NHS Emergency Centers, LLC Series 110 - Crosby, Covered Entity

By: _____
   Setul Patel, President of
   Neighbors Health System, Inc., its Manager

**EXHIBIT 3**