IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| NEIGHBORS LEGACY HOLDINGS, INC., | § | CASE NO. 18-33836-H1-11 |
| | § | (Chapter 11) |
| Debtor. | § | |
| | | |
| MARK SHAPIRO, TRUSTEE | § | |
| OF THE UNSECURED CREDITOR TRUST | § | |
| OF NEIGHBORS LEGACY HOLDINGS, | § | |
| INC. AND ITS DEBTOR AFFILIATES | § | ADV. P. NO. 20-03016 |
| | § | |
| *Plaintiff* | § | |
| | § | |
| VS. | § | |
| | § | |
| | § | |
| TOM VO et al. | § | |
| | § | |
| | § | |
| *Defendants.* | § | |

**PLAINTIFF'S RESPONSE TO CHAMBERLAIN
GROUP'S MOTION TO DISMISS AND MOTION
FOR SUMMARY JUDGMENT**

1

TO THE HONORABLE MARVIN ISGUR, U.S. BANKRUPTCY JUDGE:  COMES NOW, PLAINTIFF MARK SHAPIRO, TRUSTEE OF THE UNSECURED CREDITOR TRUST OF NEIGHBORS LEGACY HOLDINGS, INC. AND ITS DEBTOR AFFILIATES and files this Response to the Chamberlain Group[1] Defendants' Motion for Partial Summary Judgment (Dkt. 79) and would show as follows:

## SUMMARY OF RESPONSE

Summary judgment should be denied by this Court for multiple reasons.  First, Plaintiff has identified summary judgment evidence that creates a genuine issue of material fact as to whether the Neighbors Debtor Entities owned the funds transferred and at issue in this case.  By tracing the alleged transfers from the journal entries to the relevant bank records, the Plaintiff has established that these transfers came from bank accounts owned by Neighbors Debtor Entities.  Similarly, there is a genuine issue of material fact as to whether the Neighbors Debtor Entities were insolvent.  As the Court is well aware, all the Neighbors Debtor Entities guaranteed approximately $120 million in debt.  Moreover, balance sheet insolvency is not the only method of determining solvency within the context of a fraudulent transfer claim, as Plaintiff can also show that the Neighbors Debtor Entities were engaged in business while undercapitalized and the entities were unable to pay debts as they becme due.

## BACKGROUND

1. The Neighbors Defendants and Neighbors Debtor Entities[2] are a group of entities that owned and operated freestanding emergency centers in and around the State of Texas.   Starting in

---

[1] The Chamberlain Group Defendants include AB Physician Services LLC; Abarado & Do Family, LP; Atiba Bell Medical Associates, PLLC; EDR Investments, LLC; EMTEX Investments, LLC; Ekta Popat; Fillory Holdings, LLC; Isaac Freeborn; Kenneth M. Direkly; Manuel Acosta, PLLC; Pranav Shukla, MD; Thanh Cheng, MD; and Towards Infinity, LLC.

[2] The Neighbors Debtor Entities include Neighbors Legacy Holdings, Inc., Neighbors Global Holdings, LLC, Neighbors Health, LLC, NEC Bellaire Emergency Center, LP, NEC Kingwood Emergency Center, LP, NEC Baytown Emergency Center, LP, NEC Pasadena Emergency Center, LP, NEC Pearland Emergency Center, LP, NEC Lakeline Emergency

2014, the Neighbors Debtor Entities undertook a massive expansion campaign fueled by debt. Initially, this campaign was funded by a $31 million debt transaction with BBVA Compass in 2014, which was later increased to $50 million.[3] To further the Neighbors Debtor Entities' expansion vision, it also obtained a $150 million term loan from a syndicate led by KeyBank in late 2015.[4] Prior to filing a voluntary bankruptcy petition on July 12, 2018, the Neighbors Defendants and Neighbors Debtor Entities transferred funds to each member of the Defendants.[5] Plaintiff Mark Shapiro, Trustee of the Unsecured Creditor Trust, brought claims for recovery of the transfer of these funds from each of these members under 11 U.S.C. § 544, 548, 550, and Tex. Bus. Comm. Code § 24.006.

2. On September 30, 2020, the Chamberlain Group moved for partial summary judgment on Plaintiff's claims,[6] raising the following issues: (1) Chamberlain Group argues that Plaintiff has no standing to pursue claims because the transferred funds belonged to the non-debtor Series LLC's and not the Neighbors Debtor Entities, (2) the Series LLC's and/or Neighbors Debtor Entities were solvent at the time of the transfers, (3) the Neighbors Debtor Entities received reasonably equivalent value in exchange for the alleged transfers, (4) that the Chamberlain Group were good-faith subsequent transferees of the funds. For the reasons set forth below, the Chamberlain Group's Motion

---

Center, LP, NEC Beaumont Emergency Center, LP, NEC Mueller Emergency Center, LP, NEC Yorktown Emergency Center, LP, NEC Crosby Emergency Center, LP, NEC Orange Emergency Center, LP, NEC Midland Emergency Center, NEC Zaragoza Emergency Center, LP, NEC Tyler Emergency Center, LP, NEC Eastside Emergency Center, LP, NEC Port Arthur Emergency Center, LP, NEC Texas City Emergency Center, LP, NEC Odessa Emergency Center, LP, NEC Harlingen Emergency Center, LP, NEC Amarillo Emergency Center, LP, NEC Porter Emergency Center, LP, NEC Brownsville Emergency Center, LP, NEC McAllen Emergency Center, LP, NEC Wichita Falls Emergency Center, LP, NEC Longview Emergency Center, LP, NEC Texarkana Emergency Center, LP, NEC San Angelo Emergency Center, LP, NEC College Station Emergency Center, LP, NEC Lufkin Emergency Center, LP, NEC West Warwick Emergency Center, LP, NEC Lubbock Emergency Center, LP, NEC Greeley Emergency Center, LP, Next Door Urgent Care, LLC, NEC Paris Emergency Center, LP, NEC Kerrville Emergency Center, LP, NEC Amarillo South Emergency Center, LP, EDMG, LLC, Neighbors Emergency Center, LLC, Neighbors GP, LLC, Neighbors Physician Group, PLLC, Neighbors Practice Management, LLC, Neighbors Physician Group – Colorado, LLC, NEC Pharr Emergency Center, LP, NEC Kingwood Asset Holdings, LLC, NEC Baytown Asset Holdings, LLC, NEC Pearland Asset Holdings, LLC, NEC Beaumont Asset Holdings, LLC.

[3] *See* Ex. A-1 Declaration of Chad J. Shandler, at ¶ 22.
[4] *Id.*
[5] *Id.* at ¶ 24.
[6] Dkt. 79.

for Summary Judgment should be denied as there are genuine issues of material fact in each of these areas.

## ARGUMENT AND AUTHORITIES

3.     A court may only grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.[7] The movant for summary judgment has the initial burden of demonstrating the absence of material fact issues.[8]  To avoid summary judgment, the nonmovant must put forth evidence which creates a material fact issue concerning the essential elements of its case.[9]  In reviewing evidence before it, this Court must view all evidence in the light most favorable to Plaintiff—Plaintiff's evidence must all be taken as true.[10]

**A.     Genuine issues of material fact exist as to whether the transferred funds belonged to the Neighbors Debtor Entities.**

4.     Chamberlain Group Defendants first argument is that that the funds transferred did not belong to a debtor entity and instead belonged to a non-debtor Series LLC.  As a result, the Chamberlain Group Defendants argue, the transfer is not subject to an avoidance.  However, the uncontroverted summary judgment evidence before this Court clearly demonstrates otherwise.  In fact, the evidence clearly shows that all of the transfers were direct transfers from a bank account belonging to a Neighbors Debtor Entity to the respective Chamberlain Group Defendant.[11]

5.     This analysis is fully described in Chris Meadors' Declaration and the attachments thereto.  Specifically, Mr. Meadors traced the funds transferred to each Chamberlain Group Defendant and found that each transfer originated from a Neighbors Debtor Entity bank account as a

---

[7] *See* Fed. R. Civ. P. 56(a).
[8] *Abbott v. Equity Group*, 2 F.3d 613, 619 (5th Cir. 1993).
[9] *See id.*
[10] *See Waste Mgmt. of La., L.L.C. v. River Birch, Inc.*, 920 F.3d 958, 964 (5th Cir. 2019).
[11] Ex. B, Declaration of Chris Meadors; Ex B-1, Chart attached to Affidavit of Chris Meadors.

direct deposit into each of the Chamberlain Group Defendants.[12]  The money did not pass between any non-debtor person or entity (such as a Series LLC) prior to reaching each of the defendants.[13]

6.     For example, Defendant Pranav Shukla received seventeen payments between January 1, 2017 and March 31, 2018 totaling $520,321.54.  All of these payments originated from bank accounts owned by NEC Pasadena Emergency Center, LP, NEC Baytown Emergency Center, LP, NEC Crosby Emergency Center LP, and NEC Yorktown Emergency Center, LP.[14]  These entities are all debtors to the bankruptcy.

7.     Similarly, AB Physician Services, LLC received five transfers from NEC Harlingen Emergency Center LP's bank account between December 31, 2016 and March 31, 2018 totaling $249,669.78.[15]  NEC Harlingen is a Neighbors Debtor Entity.  The entries for the transfers make no indication that the funds belonged to an entity other than NEC Harlingen.  Therefore, at a minimum, a genuine issue of material fact exists as to whether NEC Harlingen is the owner of the funds that it transferred to AB Physician Services, LLC.

8.     Likewise, the remaining Chamberlain Group Defendants transfers also all originated with Neighbors Debtor Entities as outlined in Mr. Meadors' Declaration and the attachments thereto.[16]  The Meadors analysis shows that all of the transfers to the Chamberlain Group Defendants came from a bank account belonging to one of the Neighbors Debtor Entities: NEC Pasadena Emergency Center, LP, NEC Baytown Emergency Center, LP, NEC Crosby Emergency Center LP, NEC Yorktown Emergency Center, LP, NEC Harlingen Emergency Center, LP, and NEC Port Arthur Emergency Center LP.[17]  Because these transfers were coming directly from debtor bank accounts,

---

[12] Ex. B, Declaration of Chris Meadors.
[13] *See id.*
[14] Ex. B-1.
[15] Ex. B-1.
[16] Ex. B, B-1.
[17] *Id.*

there is a fact issue as to the ownership of the funds. It should also be noted that the Chamberlain Defendants acknowledge this fact in their Motion and do not dispute that the funds transferred came from accounts owned by Debtor entities.[18]

9. Instead, the Chamberlain Group Defendants argue that regardless of the bank account from which the funds were coming from, the funds really belonged to the Series LLC.[19] However, the Chamberlain Group Defendants' attempts to characterize these payments as coming from the Series LLC only further highlights the fact that there is a genuine issue of material fact over ownership of the funds transferred.[20]

10. The undisputed summary judgment evidence money that was transferred to each of the Chamberlain Group Defendants came directly from bank accounts registered to Neighbors Debtor Entities.[21] The funds did not come from a bank account owned by the Series LLC.[22] Because this creates a genuine issue of material fact, summary judgment on this issue is inappropriate and therefore should be denied.

**B.    Genuine issues of material fact exist regarding whether the Neighbors Debtor Entities were insolvent at the time of the transfers.**

11. The remainder of the Chamberlain Group Defendants' arguments for summary judgment all hinge on the flawed premise that the transfers were made by the Series LLCs and not the Neighbors Debtor Entities. As demonstrated above, a genuine issue of material fact exists as to the ownership of the funds transferred.

---

[18] Dkt. 79 at ¶ 13.
[19] Dkt. 79 at ¶ 13.
[20] The Chamberlain Group Defendants also argue that the Trustee has judicially admitted that the "profits and losses of the Series are owned by the members of the Series. *See* Dkt. 79 at ¶ 47. However, the issue in this case is whether or not the transfers of funds from accounts owned by the debtors (as opposed to the Series LLCs) can be recovered. Moreover, to the extent that they are trying to boot-strap this statement into an admission that the transfers from accounts owner by Debtors was really the money of the Series LLCs—which is not what the Trustee's pleading states at all—such an effort fails because a statement on one case may not be used as a judicial admission in another proceeding. *See, e.g. Constr. Diversity Grp. v. Hadley (In re Hadley)*, Bankr. LEXIS 1717, at *11-14 (Bank. S.D.T.X. July 1, 2020).
[21] Ex. B-1, Chart attached to Affidavit of Chris Meadors.
[22] *See id.*

12. For example, the Chamberlain Defendants go to great lengths to demonstrate that balance sheets for various Series LLCs indicate that these entities were not insolvent.[23] This straw-man argument is without merit because the solvency of the Series LLCs is not at issue in transfers made by the Neighbors Debtors Entities.

13. Likewise, the Chamberlain Defendants argue that the balance sheets of the Neighbors Debtor Entities likewise showed that they were balance sheet solvent.[24] However, these balance sheets do not account for the massive debt in excess of $120 MM that was cross-guaranteed by all the Neighbors Debtor Entities and rendered those entities balance sheet insolvent. At a minimum, a question of fact exists as to the balance sheet solvency of the Neighbors Debtor Entities given this massive cross-guarantee.

14. Moreover, a company is insolvent if the sum of its debts is greater than the value of all of its assets, at a fair valuation.[25] A debt is defined as liability on a claim,[26] and a "claim" is defined broadly.[27] Guarantees of a corporate debt can be included in determining insolvency if the debtor would likely be called upon to honor the guarantees as they were in this case.[28]

15. Indeed, Chief Restructuring Officer for Neighbors Chad Shandler stated in his First Day Filing declaration that the Debtors had a Prepetition Credit Agreement that provided a revolving line of credit of $30 million, along with a term loan of $120 million.[29] All of these loan obligations were guaranteed by the Neighbors Debtor Entities.[30] Because the evidence before the court shows a claim in excess of $120 million for all of the Neighbors Debtor Entities,[31] there is a fact issue over

---

[23] Dkt. 79 at ¶¶ 56-67.
[24] *Id.* at 55.
[25] 11 U.S.C. § 101(32).
[26] 11 U.S.C. § 101(12).
[27] *See* 11 U.S.C. § 101(5).
[28] *Solomon v. Stillwater Nat'l Bank & Trust Co.*, 299 B.R. 626 at Note 55 (10th Cir. 2003).
[29] Exhibit A-1 at ¶ 22.
[30] *Id.* at ¶ 24.
[31] Ex. A-1 at ¶ 22, 24.

the solvency of every single entity, regardless of balance sheets showing the individual entity had more assets than liabilities. As a result, summary judgment should be denied.[32]

### C. Genuine issues of material fact exist regarding whether the Neighbors Debtor Entities received reasonably equivalent value in exchange for the transfers.

16. The Chamberlain Group Defendants next argue that they provided professional services in exchange for the transfers, and therefore, reasonably equivalent value was given in exchange for the transfers. They attempt to characterize these payments as "supplemental compensation" for shifts worked; however, it is important to note that each of the Chamberlain Defendants admit that they were already paid for each shift that they had previously worked.[33] Thus, in an effort to establish that the transfers were for value, the Chamberlain Group Defendants claim that their prior compensation was "below market for compensation for emergency room physicians" and argue that the transfers given to each of the Chamberlain Group Defendants were "supplemental" to money each had already received as a result of working shifts that they had already worked at various Neighbors facilities rather than simply a distribution or transfer.[34]

17. This argument is inherently factual, subjective, and will be subject to disputed expert testimony by the parties, and summary judgment at this stage is inappropriate. For example, Plaintiff anticipates that the reasonableness of the value of services rendered by the Chamberlain Group Defendants and the compensation they were paid at the time those services were rendered will be the subject of expert testimony. Plaintiff expects to further develop factual information as to the value

---

[32] Moreover, balance sheet insolvency is only one method by which the Plaintiff can establish that the debtor was insolvent. For example, the Plaintiff can also establish this element by proving that the debtor was inadequately capitalized to pursue its business model. As Plaintiff has alleged, Neighbors went on a massive expansion campaign fueled by debt in order to add thirty-two facilities by 2016. The Trustee believes that Neighbors was inadequately capitalized and intends to establish this through expert testimony as alleged in his Amended Petition. At this preliminary stage, prior to any discovery being conducted, summary judgement is inappropriate on this issue as the parties have not yet begun this analysis.
[33] *See* Dkt. 79 at ¶ 76.
[34] Chamberlain Group Defendants acknowledge the fact that these were supplemental payments. Dkt. 79 at ¶ 76 ("Such distributions . . . were necessary <u>to supplement their Center staff's compensation</u> for the services rendered . . . .")

of services provided in exchange for the supplemental payments during discovery. At this preliminary stage in the proceedings, summary judgment without this discovery and testimony is inappropriate.

18. Plaintiff acknowledges that transfers made for tax distributions are not generally avoidable. However, Plaintiff contends that many of the alleged transfers were not tax distributions and are not identified as such on the bank records.[35] As a result, there is at a genuine issue of material fact as to the characterization of many of these transfers, as discussed *supra*, as well as a fact issue as to the amount of transfers that were made for tax distributions as opposed to alleged "supplemental compensation." As a result, a genuine issue of material fact exists as to the amount of the transfers even assuming some of the transfers may have been for tax distribution purposes. For the above reasons, summary judgment should be denied on this issue.

**D.   Chamberlain Group Defendants have not met their burden of showing, as a matter of law, that they took the transfer for value, in good faith, and without knowledge of its voidability.**

19. Chamberlain Group Defendants likewise raise a good-faith defense provided by Section 550(b) of the Bankruptcy Code; however, they have not met their burden of proof in establishing their affirmative defense.

20. First, Defendants' arguments are based in the presumption that they were taking the money from a Series LLC, which as discussed above, is contested. In addition, each of the Chamberlain Group Defendants' actual knowledge is an individual question of fact, will be the subject of discovery, and must be determined to be in good faith by the tryer of fact in order for the defense to be successful.

21. Second, as a defense, it is also the Chamberlain Group Defendants to affirmatively prove such a defense as a matter of law. At this stage of the proceedings Chamberlain Group

---

[35] *See* Ex. B-1.

Defendants are only able to point to their own conclusory statements to show their purported good-faith, and the Chamberlain Group Defendants' subjective intent would be the subject of written and oral discovery. Summary judgment on this issue at this stage of the proceedings is inappropriate and should be denied.

**E.      Plaintiff is able to point to unsecured creditors at the time of transfers at issue in the Complaint.**

22.     Chamberlain Group Defendants argue that Plaintiff needs to match unsecured creditors that pre-date the transfers to each debtor entity, but this is not the case for a joint bankruptcy such as this one. In joint bankruptcy proceedings, a bankruptcy court can disregard separate entities in order to reach assets for the satisfaction of debts of a related corporation.[36] This allows the court to treat all of the entities as one unit[37] and eliminates the need to trace specific unsecured creditors to specific entities. In these circumstances, an unsecured creditor existing for one entity gives Plaintiff standing with respect to all Neighbors Debtor Entities.

23.     Properly filing a proof of claim constitutes prima facie evidence of the claim's validity and amount.[38] Moreover, the Neighbors Bankruptcy record shows unsecured tax debts of $22,889.10 to Brazos County, $27,982.04 to Williamson County, and $23,878.26 to Pine Tree Independent School District which were due in January 2017.[39]

24.     In addition to this, a number of other proof of claims were properly filed going back as early as 2015 and 2016 in each of the Neighbor Debtor Entity bankruptcies. All of the Chamberlain Group Defendants received their transfers from one of the following entities: NEC Pasadena Emergency Center, LP; NEC Baytown Emergency Center, LP; NEC Crosby Emergency Center, LP; NEC Yorktown Emergency Center, LP; NEC Harlingen Emergency Center, LP; and NEC Port Arthur

---

[36] *Alexander v. Compton*, 229 F.3d 750, 764 (9th Cir. 2000).
[37] *See id.* at 768.
[38] Fed. R. Bank. 3001(f); *see also McGee v. O'Connor*, 153 F.3d 258, 260 (5th Cir. 1998).
[39] Ex. A-2, 10-1 12-1 and 13-1 in Claims Registry.

Emergency Center, LP. A sampling of each of these debtor entities had properly filed claims in their register according to the following chart:

| Entity | Claimant | Date of Claim | Amount of Claim |
|---|---|---|---|
| NEC Baytown Emergency Center, LP | UnitedHealthcare Insurance Co. | 2016 | $12,998.09[40] |
| NEC Pasadena Emergency Center, LP | UnitedHealthcare Insurance Co. | 2016 | $9,153.04[41] |
| NEC Pasadena Emergency Center, LP | Alsco Inc. | 9/21/2017 | $4,277.04[42] |
| NEC Port Arthur Emergency Center, LP | UnitedHealthcare Insurance Co. | 2015 | $2,461.16[43] |
| NEC Port Arthur Emergency Center, LP | Unifi Equipment Finance, Inc. | February 2017 | $303.87[44] |
| NEC Beaumont Emergency Center, LP | Alsco, Inc. | June 11, 2018 | $1,953.37[45] |
| NEC Beaumont Emergency Center, LP | McKesson Medical-Surgical, Inc. | June 13, 2018 | $12,732.35[46] |
| NEC Crosby Emergency Center, LP | UnitedHealthcare Insurance Co. | 2015 | $11,123.58[47] |
| NEC Odessa Emergency Center, LP | Alsco, Inc. | June 11, 2018 | $1,581.12[48] |
| NEC Amarillo Emergency Center, LP | UnitedHealthcare Insurance Co. | 2017 | $5,971.92[49] |
| NEC Porter Emergency Center | Alsco, Inc. | June 7, 2018 | $1,946.39[50] |

In addition, Read King filed a claim for over $13 million for guaranteed lease payments commencing as early as December 19, 2015.[51]

---

[40] Ex. A-2, Cause 18-33845, Dkt. 1-1 in Claims Registry. The "Date of Claim" refers to the date on which the claim accrued rather than the date it was filed.
[41] Ex. A- 2, Cause 18-33839, Dkt. 1-1- in Claims Registry.
[42] *Id*. Dkt.
[43] Ex. A-2, Dkt. 18-33844, Dkt. 2-1 in Claims Registry.
[44] *Id*. at 5-1 in Claims Registry. This claim was for ongoing rent. February 2017's rent was partially paid, leaving a balance of $303.87. The size of this claim continued to grow as future rent was not paid.
[45] Ex. A-2, Cause 18-34031, Dkt. 2-1 in Claims Registry.
[46] Ex. A-2, *Id*. at Dkt. 4-1.
[47] Ex. A-2, *Id*. at Dkt. 1-1.
[48] Ex. A-2, Cause 18-33888 at Dkt. 1-1.
[49] Ex. A-2, Cause 18-33838 at Dkt. 1-1.
[50] Ex. A-2.
[51] Ex. A-3.

25. Because these creditors properly filed their proof of claim, this Court must presume the claims and amounts claimed are valid, and thus constitutes proper summary judgment evidence that Trustee has standing to pursue its claims against Defendants for fraudulent transfers. For these reasons, Defendants' argument should be rejected and summary judgment on this ground denied.

## CONCLUSION

In sum, many fact issues exist in this case that are necessary for a jury to decide. At this preliminary stage in the proceedings, Plaintiff is able to point to bank records showing transfers of funds directly from the Neighbors Debtor Entities to Chamberlain Group Defendants, which should not have happened under any of the agreements made. This inherently creates fact issues on what the transfers were and why they were sent. For these reasons, Defendants' Motion for Summary Judgment should be denied.

Respectfully Submitted,

**WALSTON BOWLIN, LLP**

*/s/ Clifford H. Walston*
CLIFFORD WALSTON
cliff@walstonbowlin.com
State Bar No. 24037666
4299 San Felipe Street, Suite 300
Houston, Texas 77027
(713) 300-8700
(713) 583-5020 Fax
**ATTORNEY FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing pleading was served in accordance with the Federal Rules of Bankruptcy Procedure on October 21, 2020.

*/s/ Cliff Walston*
Cliff Walston