IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| NEIGHBORS LEGACY HOLDINGS, INC., | § | CASE NO. 18-33836-H1-11 |
| | § | Chapter 11 |
| Debtor | § | |
| | § | |
| MARK SHAPIRO, TRUSTEE OF THE UNSECURED CREDITOR TRUST OF NEIGHBORS LEGACY HOLDINGS, INC. AND ITS DEBTOR AFFILIATES, | § § § § | |
| Plaintiff | § | |
| | § | |
| VS. | § | ADV. NO. 20-03016 |
| | § | |
| TOM VO, ET AL., | § | JURY DEMANDED |
| Defendants | § | |

**FIRST AMENDED ORIGINAL ANSWER OF DEFENDANT
BANKYMED EMERGENCY MANAGEMENT PLLC**

TO THE HONORABLE MARVIN ISGUR UNITED STATES BANKRUPTCY JUDGE:

Comes now Bankymed Emergency Management PLLC, a professional limited liability company chartered and existing under the laws of the State of Texas ("Bankymed"), formerly known as Bankymed Emergency Management LLC, one of the Defendants in the above numbered and titled Adversary Proceeding, and for answer to the Plaintiff's Third Amended Complaint (doc 94, the "Complaint") filed by Mark Shapiro, Trustee of the Unsecured Creditor Trust of Neighbors Legacy Holdings, Inc. and its Debtor Affiliates (the "Trustee"), Bankymed respectfully represents:

## Summary

The Trustee has abandoned claims that the transfers were made with actual intent to hinder, delay, or defraud creditors.

Bankymed was an innocent investor who invested $75,000 to purchase a three percent class B limited partnership interest in NEC Port Arthur Emergency Center, LP.

Bankymed received distributions from NEC Port Arthur Emergency Center, LP during 2016 and 2017 which totaled $61,780.68.

NEC Port Arthur Emergency Center, LP was not insolvent.

NEC Port Arthur Emergency Center, LP Received Reasonably Equivalent Value.

Bankymed is a good faith transferee for value.

Bankymed was entitled to rely upon the financial statements of NEC Port Arthur Emergency Center, LP in good faith, and did not know, and had no reason to know, whether NEC Port Arthur Emergency Center, LP had or may have incurred or guaranteed any loans from Key Bank to other debtor entities, or that any such debt was not disclosed in the financial statements of NEC Port Arthur Emergency Center, LP.

If the Trustee's allegations are true, then Bankymed is the victim of fraud, and Bankymed owns a claim against NEC Port Arthur Emergency Center, LP for loss of its investment fraudulently obtained, which it may set off against the disbursements received, up to the amount of its investment.

The Trustee's claims are barred by the statutes of limitations.

### Response to the Trustee's Allegations of Jurisdiction and Venue

1. Bankymed admits paragraphs 1 through 6 of the Complaint and agrees that this Court has jurisdiction and venue to consider the Complaint as to Bankymed. Bankymed consents to the entry of final orders or judgment by this honorable Court pursuant to BLR 7008-1 and 7012-1. Bankymed does not know whether the Court has jurisdiction or venue to consider the Complaint as to Defendants other than Bankymed.

### Response to the List of Parties

2. Bankymed admits the allegation of paragraph 7 of the Complaint that the Plaintiff, Mark Shapiro, is the Trustee of the Unsecured Creditor Trust (the "Trust") of Neighbors Legacy Holdings, Inc., and its affiliates (the "Debtors").

3. Bankymed denies the allegation of paragraph 39 of the Complaint which alleges that Bankymed's name is Bankymed Emergency Management, LLC and that it is a Texas limited liability company. The correct name is Bankymed Emergency Management PLLC, and it is a Texas professional limited liability company.

4. Bankymed does not have knowledge about and is not able to either admit or deny the allegations of paragraphs 8 through 38 and 40 through 57 of the Complaint. Bankymed does not know the correct names and identity of the other defendants named in the Complaint.

### Response to Trustee's Background Facts

5. Bankymed does not have knowledge about and is not able to either admit or deny the allegations of paragraphs 58 through 62 of the Complaint concerning the bankruptcy cases of the Neighbors Debtor Entities, the Chapter 11 Plan, or the creation of the Unsecured Creditor Trust.

**Response to Trustee's Allegations of Transfers to Defendants**

6. Bankymed denies the allegations of paragraphs 63 through 73 of the Complaint and demands strict proof thereof.

7. Bankymed denies that it received the payments alleged in the Complaint and Exhibit A to the Third Amended Complaint to have been made to Bankymed.

8. Bankymed did not receive any payments or transfers from any of the debtor entities except for only from NEC Port Arthur Emergency Center, LP.

9. Bankymed denies that NEC Port Arthur Emergency Center, LP was insolvent on the dates of the distributions to Bankymed.

**Response to the Trustee's Claims and Causes of Action
For Alleged Receipt of Fraudulent Transfers
Under Bankruptcy Code Sections 548 and 550
And Texas Business and Commerce Code Section 24.006.**

10. Bankymed denies the allegations of paragraphs 74 through 82 of the Complaint as they concern Bankymed, and demands strict proof thereof.

## The Trustee has abandoned claims that the transfers were made with actual intent to defraud creditors.

11. The Trustee's Third Amended Complaint omitted the theory that the transfers were made by the Debtors with actual intent to hinder, delay, or defraud creditors, and instead the Trustee alleges only that the Debtors who made the transfers were insolvent on the dates of the transfers, and received less than reasonably equivalent value for the transfers. The Trustee omitted claims and causes of action under Bankruptcy Code Section 548(a)(1)(A) and Texas Business and Commerce Code Section 24.005, previously alleged, from the Trustee's Third Amended Complaint.

### Bankymed was an innocent investor who invested $75,000 to purchase a three percent class B limited partnership interest in NEC Port Arthur Emergency Center, LP.

12. Bankymed was an innocent investor in NEC Port Arthur Emergency Center, L.P. and owned only a 3% class B limited partnership interest in NEC Port Arthur Emergency Center, LP. Bankymed invested $75,000.00 to purchase a 3% limited partnership interest in NEC Port Arthur Emergency Center, L.P. This is proved by Bankymed Exhibit 1 – Investor Share Form and Bankymed Exhibit 2 – Payments to NEC Port Arthur Emergency Clinic, LP which are attached hereto. Bankymed did not participate in the management of NEC Port Arthur Emergency Center, LP, or any other debtor entity. Bankymed did not own an interest in any other of the debtor entities except only NEC Port Arthur Emergency Clinic, LP.

### Bankymed received distributions from NEC Port Arthur Emergency Center, LP during 2016 and 2017 which totaled $61,780.68.

13. Bankymed received distributions from NEC Port Arthur Emergency Clinic, LP during the years 2016 and 2017 which totaled the sum of $61,780.68. This is proved by Bankymed Exhibit 3 – Payments Received From NEC Port Arthur Emergency Center, LP, attached hereto. Bankymed did not receive any payments or transfers from any of the debtor entities except only from NEC Port Arthur Emergency Center, L.P.

### NEC Port Arthur Emergency Center, LP was not insolvent.

14. On the dates of the payments to Bankymed, and at all relevant times, NEC Port Arthur Emergency Center, LP was not insolvent, and did not become insolvent as a result of any of the payments to Bankymed. This is proved by the financial statements of NEC Port Arthur Emergency Center, LP attached hereto and marked Bankymed Exhibit 4 – Financial Statements

of NEC Port Arthur Emergency Center, LP.  Bankymed is not liable to the Trustee under 11 U.S.C. Section 548(a)(1)(B)(ii), or Texas Bus. & Comm. Code Section 24.006.

### NEC Port Arthur Emergency Center, LP Received Reasonably Equivalent Value.

15.   The total of all payments received by Bankymed from NEC Port Arthur, LP. is less than the amount which Bankymed paid to purchase its limited partnership interest.  This is proved by Bankymed Exhibit 5 – Summary, attached hereto.

16.   NEC Port Arthur Emergency Center, LP received reasonably equivalent value in exchange for the distributions to Bankymed.  Bankymed invested $75,000.00 to purchase a 3 percent limited partnership interest in NEC Port Arthur Emergency Center, LP.  Bankymed's capital contribution is "value" as defined in Tex. Bus. Comm. Code § 24.004(a) and is "reasonably equivalent value" as defined in Tex. Bus. Comm. Code § 24.004(d).  The amount invested is greater than the amount of all payments from NEC Port Arthur Emergency Center, LP to Bankymed, and Bankymed is not liable to the Trustee under Bankruptcy Code Section 548(a)(1)(B)(i) or Tex. Bus. & Comm. Code Section 24.006.

17.   NEC Port Arthur Emergency Center, L.P. is a pass through entity for federal income taxes, and did not pay taxes on its income directly to the United States Treasury.  The federal income tax liability of NEC Port Arthur Emergency Center, L.P. was passed through to the limited partners in proportion to each partners' share of ownership of the limited partnership, and reported on K-1 statements to the individual partners.  The money paid by NEC Port Arthur Emergency Center, L.P. to its limited partners was for the purpose and in amounts to enable each partner to pay its share of the partnership's federal income tax liability (the "Tax Distributions").  Bankymed paid its share of the federal income tax liability of NEC Port Arthur Emergency Center, LP to the United States Treasury with Bankymed's federal income tax returns.

Bankymed's share of the federal income tax liability of NEC Port Arthur Emergency Center, L.P. is value and reasonably equivalent value for the amounts of the Tax Distributions which Bankymed received.

### Bankymed is a Good Faith Transferee for Value.

18. Bankruptcy Code Section 548(c) provides that a transferee or oblige of such a transfer or obligation that takes for value and in good faith has a lien on or may retain any interest transferred or may enforce any obligation incurred, as the case may be to the extent that such transferee or oblige gave value to the debtor in exchange for such transfer or obligation.

19. Bankruptcy Code Section 550(b) provides that the trustee may not recover under section (a)(2) of Section 550 from a transferee that takes for value, including satisfaction or securing of a present or antecedent debt, in good faith, and without knowledge of the voidability of the transfer avoided.

20. Bankymed gave value in the amount of $75,000.00 to NEC Port Arthur Emergency Center, LP to purchase a 3 percent class B limited partnership interest in NEC Port Arthur Emergency Center, in good faith, and without knowledge that NEC Port Arthur Emergency Center, LP guaranteed any debts or loans made by Key Bank to other Debtor entities or was not a solvent entity. Bankymed was entitled to rely upon and did rely upon the truth of financial statements prepared by and furnished to Bankymed by and for NEC Port Arthur Emergency Center, LP, which showed that, at all material times, NEC Port Arthur Emergency Center, LP was solvent, that the value of its assets were greater than the sum of its debts, and that the amount of its income was greater than the amount of its expenses, and Bankymed acted in good faith in relying upon the financial statements of NEC Port Arthur Emergency Center, LP, at the time the distributions were made.

21. The total amount of distributions, which Bankymed received from NEC Port Arthur Emergency Center, LP, totaled $61,780.68, and was less than in the amount of $75,000.00 that Bankymed invested to purchase a 3 percent limited partnership interest in NEC Port Arthur Emergency Center, LP.

22. In addition, the distributions were made to enable Bankymed, and other limited partners, to be able to pay their proportionate share of the federal income tax liability of NEC Port Arthur Emergency Center, LP (the Tax Distributions).  Bankymed paid its proportionate share of federal income taxes based upon income of NEC Port Arthur Emergency Center, LP for the years in which the Tax Distributions were made, which is value and reasonably equivalent value, for the Tax Distributions.  Such Tax Distributions are not avoidable by the Trustee.

**Bankymed was entitled to rely upon the financial statements of NEC Port Arthur Emergency Center, LP in good faith, and did not know, and had no reason to know, whether NEC Port Arthur Emergency Center, LP had or may have incurred or guaranteed any loans from Key Bank to other debtor entities, or that any such debt was not disclosed in the financial statements of NEC Port Arthur Emergency Center, LP.**

23. Bankymed was entitled to rely upon the financial statements of NEC Port Arthur Emergency Center, LP, in good faith.  The financial statements were prepared by the accounting firm of Briggs & Veselca Co., and Bankymed in good faith believed that the financial statements were true and correct.  Bankymed was a limited partner and did not participate in the management or financial affairs of NEC Port Arthur Emergency Center, LP.  Bankymed did not know, and had no reason to know whether NEC Port Arthur Emergency Center, LP had or may have incurred or guaranteed any loans from Key Bank to other debtor entities, or that any such guaranteed debt was not disclosed in the Financial Statements.

**If the Trustee's allegations are true, then Bankymed is the victim of fraud, and Bankymed owns a claim against NEC Port Arthur Emergency Center, LP for loss of its investment fraudulently obtained, which it may set off against the disbursements received, up to the amount of its investment.**

24. If there is any truth to the Trustee's allegations that NEC Port Arthur Emergency Center, LP guaranteed massive indebtedness incurred by other debtor entities to obtain loans from Key Bank, which was not disclosed in the financial statements of NEC Port Arthur Emergency Center, LP., then Bankymed is the victim of fraud, and Bankymed owns a claim against NEC Port Arthur Emergency Center, LP for loss of its investment fraudulently obtained in the amount of $75,000.00.

25. Where fraud is involved, an equity investor gives value in exchange for return of principal, and the investor has a fraud claim against the debtor in the principal amount of the investment, and affords a defense to the investor for recovery of distributions received from the debtor, up to the amount of the lost investment. *Perkins v. Haines*, 660 F.3d 623 (11th Cir. 2011); *In re API Holdings*, 525 F.3d 700 (9thCir. 2008); *In re Bernard L. Madoff Investment Securities LLC*, No.19-0426-bk(L), (2nd Cir., September 24, 2020).

**The Trustee's claims are barred by the statutes of limitations.**

26. The Trustee's claims against Bankymed under Bankruptcy Code Sections 548 and 550 are barred by the applicable statutes of limitations. The transfers alleged to have been made to Bankymed allegedly took place more than two years before the date on which the Debtors' petitions were filed, and the Trustee's claims against Bankymed under Sections 548 and 550 of the Bankruptcy Code are barred by the two year statute of limitations of 11 U.S.C. 548(a)(1).

27. The Trustee's claims against Bankymed under Tex. Bus & Comm. Code § 24.006(b) are barred by the statute of limitations. For transfers to an insider which are sought to be avoided

under § 24.006 (b), the statute of limitations is one year after the transfer is made. Bankymed did not receive any payments or transfers from NEC Port Arthur Emergency Center LP within one year before the date of the Debtors' petitions, and the Trustee's claims are barred by the one year statute of limitations of Tex. Bus. & Comm. Code Section 24.010(a)(3).

## COUNTER CLAIM

28. The Trustee's claims against Bankymed are without merit. Bankymed is entitled to recover its reasonable attorney's fees for defending this Complaint from the Plaintiff, the Trustee of the Unsecured Creditor Trust of Neighbors Legacy Holdings, Inc. and its Debtor Affiliates, pursuant to Tex. Bus. & Comm. Code § 24.013. A reasonable attorney's fee for Bankymed for the services of its attorneys is the sum of at least $30,000.

## PRAYER

Wherefore, premises considered, Defendant Bankymed Emergency Management PLLC prays that the Trustee take nothing from Bankymed, and that Bankymed recover its costs and reasonable attorney's fees from the Plaintiff, the Trustee of the Unsecured Creditor Trust of Neighbors Legacy Holdings, Inc. and its Debtor Affiliates, and for such and further relief to which Bankymed may show itself to be justly entitled.

          Respectfully submitted,

          ROSS, BANKS, MAY, CRON & CAVIN, P.C.

          By: *John Mayer*
          John Mayer
          Texas Bar Number 13274500
          Southern District Number 502092
          7700 San Felipe, Suite 550
          Houston, Texas 77063
          Phone 713-626-1200
          Email jmayer@rossbanks.com
          Attorney for Defendant
          Bankymed Emergency Management PLLC

## CERTIFICATE OF SERVICE

      I certify that true copies of this answer were served upon the Trustee by email to the Trustee's attorney of record Clifford Walston of the law firm of Walston Bowlin, LLP, to email address cliff@walstonbowlin.com, and on all persons who have entered an appearance in this case electronically by means of the Court's CM/ECF System contemporaneously with filing. This service was completed on December 29, 2020..

*[signature]*

John Mayer