IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| IN RE: | |
| NEIGHBORS LEGACY HOLDINGS, INC., | CASE NO. 18-33836-H1-11 |
| | Chapter 11 |
| Debtor | |
| | |
| MARK SHAPIRO, TRUSTEE OF THE UNSECURED CREDITOR TRUST OF NEIGHBORS LEGACY HOLDINGS, INC. AND ITS DEBTOR AFFILIATES, | |
| Plaintiff | |
| | |
| VS. | ADV. NO. 20-03016 |
| | |
| TOM VO, ET AL., | JURY DEMANDED |
| Defendants | |

**FIRST AMENDED ORIGINAL ANSWER OF
DEFENDANT ELANIE UCBAMICHAEL MD**

TO THE HONORABLE MARVIN ISGUR UNITED STATES BANKRUPTCY JUDGE:

Comes now Elanie UcBamichael MD ("Dr. UcBamichael"), one of the Defendants in the above numbered and titled Adversary Proceeding, and for answer to the Plaintiff's Third Amended Complaint (doc 94, the "Complaint") filed by Mark Shapiro, Trustee of the Unsecured Creditor Trust of Neighbors Legacy Holdings, Inc. and its Debtor Affiliates (the "Trustee"), Elanie UcBamichael MD respectfully represents:

**Summary**

**The Trustee has abandoned claims that the transfers were made with actual intent to hinder, delay, or defraud creditors.**

**Dr. UcBamichael was an innocent investor who invested $75,000 to purchase a three percent class B limited partnership interest in NEC Port Arthur Emergency Center, LP.**

**Dr. UcBamichael received distributions from NEC Port Arthur Emergency Center, LP during 2016 and 2017 which totaled $61,780.68.**

**NEC Port Arthur Emergency Center, LP was not insolvent.**

**NEC Port Arthur Emergency Center, LP Received Reasonably Equivalent Value.**

**Dr. UcBamichael is a good faith transferee for value.**

**Dr. UcBamichael was entitled to rely upon the financial statements of NEC Port Arthur Emergency Center, LP in good faith, and did not know, and had no reason to know, whether NEC Port Arthur Emergency Center, LP had or may have incurred or guaranteed any loans from Key Bank to other debtor entities, or that any such debt was not disclosed in the financial statements of NEC Port Arthur Emergency Center, LP.**

**If the Trustee's allegations are true, then Dr. UcBamichael is the victim of fraud, and Dr. UcBamichael owns a claim against NEC Port Arthur Emergency Center, LP for loss of its investment fraudulently obtained, which she may set off against the disbursements received, up to the amount of its investment.**

**The Trustee's claims are barred by the statutes of limitations.**

### Response to the Trustee's Allegations of Jurisdiction and Venue

1. Dr. UcBamichael admits paragraphs 1 through 6 of the Complaint and agrees that this Court has jurisdiction and venue to consider the Complaint as to Dr. UcBamichael. Dr. UcBamichael consents to the entry of final orders or judgment by this honorable Court pursuant

to BLR 7008-1 and 7012-1. Dr. UcBamichael does not know whether the Court has jurisdiction or venue to consider the Complaint as to Defendants other than Dr. UcBamichael.

## Response to the List of Parties

2. Dr. UcBamichael admits the allegation of paragraph 7 of the Complaint that the Plaintiff, Mark Shapiro, is the Trustee of the Unsecured Creditor Trust (the "Trust") of Neighbors Legacy Holdings, Inc., and its affiliates (the "Debtors").

3. Dr. UcBamichael admits the allegation of paragraph 50 of the Complaint which alleges that Dr. UcBamichael is an individual resident of Texas.

4. Dr. UcBamichael does not have knowledge about and is not able to either admit or deny the allegations of paragraphs 8 through 49 and 51 through 57 of the Complaint. Dr. UcBamichael does not know the correct names and identity of the other defendants named in the Complaint.

## Response to Trustee's Background Facts

5. Dr. UcBamichael does not have knowledge about and is not able to either admit or deny the allegations of paragraphs 58 through 62 of the Complaint concerning the bankruptcy cases of the Neighbors Debtor Entities, the Chapter 11 Plan, or the creation of the Unsecured Creditor Trust.

## Response to Trustee's Allegations of Transfers to Defendants

6. Dr. UcBamichael denies the allegations of paragraphs 63 through 73 of the Complaint and demands strict proof thereof.

7. Dr. UcBamichael denies that she received the payments alleged in the Complaint and Exhibit A to the Third Amended Complaint to have been made to Dr. UcBamichael.

8. Dr. UcBamichael did not receive any payments or transfers from any of the debtor entities except for only from NEC Port Arthur Emergency Center, LP.

9. Dr. UcBamichael denies that NEC Port Arthur Emergency Center, LP was insolvent on the dates of the distributions to Dr. UcBamichael. This is proved by UcBamichael Exhibit 1 – Financial Statements of NEC PortArthur Emergency Cener, LP, attached hereto.

**Response to the Trustee's Claims and Causes of Action
For Alleged Receipt of Fraudulent Transfers
Under Bankruptcy Code Sections 548 and 550
And Texas Business and Commerce Code Section 24.006.**

10. Dr. UcBamichael denies the allegations of paragraphs 74 through 82 of the Complaint as they concern Dr. UcBamichael, and demands strict proof thereof.

## The Trustee has abandoned claims that the transfers were made with actual intent to defraud creditors.

11. The Trustee's Third Amended Complaint omitted the theory that the transfers were made by the Debtors with actual intent to hinder, delay, or defraud creditors, and instead the Trustee alleges only that the Debtors who made the transfers were insolvent on the dates of the transfers, and received less than reasonably equivalent value for the transfers. The Trustee omitted claims and causes of action under Bankruptcy Code Section 548(a)(1)(A) and Texas Business and Commerce Code Section 24.005, previously alleged, from the Trustee's Third Amended Complaint.

## Dr. UcBamichael was an innocent investor who invested $75,000 to purchase a three percent class B limited partnership interest in NEC Port Arthur Emergency Center, LP.

12. Dr. UcBamichael was an innocent investor in NEC Port Arthur Emergency Center, L.P. and owned only a 3% class B limited partnership interest in NEC Port Arthur Emergency Center, LP. Dr. UcBamichael invested $75,000.00 to purchase a 3% limited partnership interest

in NEC Port Arthur Emergency Center, L.P. This is proved by UcBamichael Exhibit 3 – Check to Purchase Limited Partnership Interest attached hereto.  Dr. UcBamichael did not participate in the management of NEC Port Arthur Emergency Center, LP, or any other debtor entity.  Dr. UcBamichael did not own an interest in any other of the debtor entities except only NEC Port Arthur Emergency Clinic, LP.

### Dr. UcBamichael received distributions from NEC Port Arthur Emergency Center, LP during 2016 and 2017 which totaled $61,780.68.

13.   Dr. UcBamichael received distributions from NEC Port Arthur Emergency Clinic, LP during the years 2016 and 2017 which totaled the sum of $36,364.58.  This is proved by Dr. UcBamichael Exhibit 4 – Bank Statements for Payments Received From NEC Port Arthur Emergency Center, LP by Dr. UcBamichael, attached hereto.  Dr. UcBamichael did not receive any payments or transfers from any of the debtor entities except only from NEC Port Arthur Emergency Center, L.P.

### NEC Port Arthur Emergency Center, LP was not insolvent.

14.   On the dates of the payments to Dr. UcBamichael, and at all relevant times, NEC Port Arthur Emergency Center, LP was not insolvent, and did not become insolvent as a result of any of the payments to Dr. UcBamichael.  This is proved by the financial statements of NEC Port Arthur Emergency Center, LP attached hereto and marked Dr. UcBamichael Exhibit 1 – Financial Statements of NEC Port Arthur Emergency Center, LP.  Dr. UcBamichael is not liable to the Trustee under 11 U.S.C. Section 548(a)(1)(B)(ii), or Texas Bus. & Comm. Code Section 24.006.

## NEC Port Arthur Emergency Center, LP Received Reasonably Equivalent Value.

15. The total of all payments received by Dr. UcBamichael from NEC Port Arthur, LP. is less than the amount which Dr. UcBamichael paid to purchase its limited partnership interest. This is proved by Dr. UcBamichael Exhibit 5 – Summary, attached hereto.

16. NEC Port Arthur Emergency Center, LP received reasonably equivalent value in exchange for the distributions to Dr. UcBamichael. Dr. UcBamichael invested $75,000.00 to purchase a 3 percent limited partnership interest in NEC Port Arthur Emergency Center, LP. Dr. UcBamichael's capital contribution is "value" as defined in Tex. Bus. Comm. Code § 24.004(a) and is "reasonably equivalent value" as defined in Tex. Bus. Comm. Code § 24.004(d). The amount invested is greater than the amount of all payments from NEC Port Arthur Emergency Center, LP to Dr. UcBamichael, and Dr. UcBamichael is not liable to the Trustee under Bankruptcy Code Section 548(a)(1)(B)(i) or Tex. Bus. & Comm. Code Section 24.006.

17. NEC Port Arthur Emergency Center, L.P. is a pass through entity for federal income taxes, and did not pay taxes on its income directly to the United States Treasury. The federal income tax liability of NEC Port Arthur Emergency Center, L.P. was passed through to the limited partners in proportion to each partners' share of ownership of the limited partnership, and reported on K-1 statements to the individual partners. The money paid by NEC Port Arthur Emergency Center, L.P. to its limited partners was for the purpose and in amounts to enable each partner to pay its share of the partnership's federal income tax liability (the "Tax Distributions"). Dr. UcBamichael paid its share of the federal income tax liability of NEC Port Arthur Emergency Center, LP to the United States Treasury with Dr. UcBamichael's federal income tax returns. Dr. UcBamichael's share of the federal income tax liability of NEC Port Arthur

Emergency Center, L.P. is value and reasonably equivalent value for the amounts of the Tax Distributions which Dr. UcBamichael received.

### Dr. UcBamichael is a Good Faith Transferee for Value.

18. Bankruptcy Code Section 548(c) provides that a transferee or oblige of such a transfer or obligation that takes for value and in good faith has a lien on or may retain any interest transferred or may enforce any obligation incurred, as the case may be, to the extent that such transferee or oblige gave value to the debtor in exchange for such transfer or obligation.

19. Bankruptcy Code Section 550(b) provides that the trustee may not recover under section (a)(2) of Section 550 from a transferee that takes for value, including satisfaction or securing of a present or antecedent debt, in good faith, and without knowledge of the voidability of the transfer avoided.

20. Dr. UcBamichael gave value in the amount of $75,000.00 to NEC Port Arthur Emergency Center, LP to purchase a 3 percent class B limited partnership interest in NEC Port Arthur Emergency Center, in good faith, and without knowledge that NEC Port Arthur Emergency Center, LP guaranteed any debts or loans made by Key Bank to other Debtor entities, or was not a solvent entity. Dr. UcBamichael was entitled to rely upon and did rely upon the truth of financial statements prepared by and furnished to Dr. UcBamichael by and for NEC Port Arthur Emergency Center, LP, which showed that, at all material times, NEC Port Arthur Emergency Center, LP was solvent, that the value of its assets were greater than the sum of its debts, and that the amount of its income was greater than the amount of its expenses, and Dr. UcBamichael acted in good faith in relying upon the financial statements of NEC Port Arthur Emergency Center, LP, at the time the distributions were made.

21. The total amount of distributions, which Dr. UcBamichael received from NEC Port Arthur Emergency Center, LP, totaled $61,780.68, and was less than in the amount of $75,000.00 that Dr. UcBamichael invested to purchase a 3 percent limited partnership interest in NEC Port Arthur Emergency Center, LP.

22. In addition, the distributions were made to enable Dr. UcBamichael, and other limited partners, to be able to pay their proportionate share of the federal income tax liability of NEC Port Arthur Emergency Center, LP (the Tax Distributions). Dr. UcBamichael paid her proportionate share of federal income taxes based upon income of NEC Port Arthur Emergency Center, LP for the years in which the Tax Distributions were made, which is value and reasonably equivalent value, for the Tax Distributions. Such Tax Distributions are not avoidable by the Trustee.

**Dr. UcBamichael was entitled to rely upon the financial statements of NEC Port Arthur Emergency Center, LP in good faith, and did not know, and had no reason to know, whether NEC Port Arthur Emergency Center, LP had or may have incurred or guaranteed any loans from Key Bank to other debtor entities, or that any such debt was not disclosed in the financial statements of NEC Port Arthur Emergency Center, LP.**

23. Dr. UcBamichael was entitled to rely upon the financial statements of NEC Port Arthur Emergency Center, LP, in good faith. The financial statements were prepared by the accounting firm of Briggs & Veselca Co., and Dr. UcBamichael in good faith believed that the financial statements were true and correct. Dr. UcBamichael was a limited partner and did not participate in the management or financial affairs of NEC Port Arthur Emergency Center, LP. Dr. UcBamichael did not know, and had no reason to know whether NEC Port Arthur Emergency Center, LP had or may have incurred or guaranteed any loans from Key Bank to

other debtor entities, or that any such guaranteed debt was not disclosed in the Financial Statements.

> **If the Trustee's allegations are true, then Dr. UcBamichael is the victim of fraud, and Dr. UcBamichael owns a claim against NEC Port Arthur Emergency Center, LP for loss of its investment fraudulently obtained, which she may set off against the disbursements received, up to the amount of its investment.**

24. If there is any truth to the Trustee's allegations that NEC Port Arthur Emergency Center, LP guaranteed massive indebtedness incurred by other debtor entities to obtain loans from Key Bank, which was not disclosed in the financial statements of NEC Port Arthur Emergency Center, LP., then Dr. UcBamichael is the victim of fraud, and Dr. UcBamichael owns a claim against NEC Port Arthur Emergency Center, LP for loss of er investment fraudulently obtained in the amount of $75,000.00.

25. Where fraud is involved, an equity investor gives value in exchange for return of principal, and the investor has a fraud claim against the debtor in the principal amount of the investment, and affords a defense to the investor for recovery of distributions received from the debtor, up to the amount of the lost investment. *Perkins v. Haines*, 660 F.3d 623 (11th Cir. 2011); *In re API Holdings*, 525 F.3d 700 (9thCir. 2008); *In re Bernard L. Madoff Investment Securities LLC*, No.19-0426-bk(L), (2nd Cir., September 24, 2020).

### The Trustee's claims are barred by the statutes of limitations.

26. The Trustee's claims against Dr. UcBamichael under Bankruptcy Code Sections 548 and 550 are barred by the applicable statutes of limitations. The transfers alleged to have been made to Dr. UcBamichael allegedly took place more than two years before the date on which the Debtors' petitions were filed, and the Trustee's claims against Dr. UcBamichael under Sections

548 and 550 of the Bankruptcy Code are barred by the two year statute of limitations of 11 U.S.C. 548(a)(1).

27. The Trustee's claims against Dr. UcBamichael under Tex. Bus & Comm. Code § 24.006(b) are barred by the statute of limitations. For transfers to an insider which are sought to be avoided under § 24.006 (b), the statute of limitations is one year after the transfer is made. Dr. UcBamichael did not receive any payments or transfers from NEC Port Arthur Emergency Center LP within one year before the date of the Debtors' petitions, and the Trustee's claims are barred by the one year statute of limitations of Tex. Bus. & Comm. Code Section 24.010(a)(3).

## COUNTER CLAIM

28. The Trustee's claims against Dr. UcBamichael are without merit. Dr. UcBamichael is entitled to recover its reasonable attorney's fees for defending this Complaint from the Plaintiff, the Trustee of the Unsecured Creditor Trust of Neighbors Legacy Holdings, Inc. and its Debtor Affiliates, pursuant to Tex. Bus. & Comm. Code § 24.013. A reasonable attorney's fee for Dr. UcBamichael for the services of its attorneys is the sum of at least $30,000.

## PRAYER

Wherefore, premises considered, Defendant Elanie UcBamichael, MD prays that the Trustee take nothing from Dr. UcBamichael, and that Dr. UcBamichael recover her costs and reasonable attorney's fees from the Plaintiff, the Trustee of the Unsecured Creditor Trust of Neighbors Legacy Holdings, Inc. and its Debtor Affiliates, and for such and further relief to which Dr. UcBamichael may show herself to be justly entitled.

Respectfully submitted,

ROSS, BANKS, MAY, CRON & CAVIN, P.C.

By: *John Mayer*
John Mayer

Texas Bar Number 13274500
Southern District Number 502092
7700 San Felipe, Suite 550
Houston, Texas 77063
Phone 713-626-1200
Email jmayer@rossbanks.com
Attorney for Defendant
Elanie UcBamichael, MD

## CERTIFICATE OF SERVICE

I certify that true copies of this answer were served upon the Trustee by email to the Trustee's attorney of record Clifford Walston of the law firm of Walston Bowlin, LLP, to email address cliff@walstonbowlin.com, and on all persons who have entered an appearance in this case electronically by means of the Court's CM/ECF System contemporaneously with filing. This service was completed on December 29, 2020.

.  *[signature: John Mayer]*
John Mayer