IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § § | |
| NEIGHBORS LEGACY HOLDINGS, INC. | § § § | CASE NO. 18-33836-H1-11<br>CHAPTER 11<br>JOINTLY ADMINISTERED |
| v. | § § | |
| MARK SHAPIRO, TRUSTEE OF THE UNSECURED CREDITOR TRUST OF NEIGHBORS LEGACY HOLDINGS, INC. AND ITS DEBTOR AFFILIATES, | § § § § § § | |
| *Plaintiff* | § § | |
| v. | § § | |
| TOM VO et. al., | § § | |
| *Defendants* | § § | |

**DEFENDANT DAVID HERRERA'S**
**MOTION FOR MORE DEFINITE STATEMENT**
and
**ORIGINAL ANSWER TO PLAINTIFF'S THIRD AMENDED COMPLAINT**

Pursuant to Rule 12 of the Federal Rules of Civil Procedure, Defendant David C. Herrera, M.D., hereby files this his Motion for More Definite Statement and Original Answer to Plaintiff's Third Amended Complaint. In support thereof, Dr. Herrera respectfully states the following:

1

## RULE 12(e) MOTION FOR MORE DEFINITE STATEMENT

Dr. David C. Herrera is an ER physician who invested in, and worked for, three Neighbors Series LLCs – Series 111 (NEC - Orange), 117 (NEC - Texas City) and 118 (NEC - Port Arthur). Two of the entities, Orange and Texas City, reported losses the entire time that Dr. Herrera was an investor. At issue in this adversary are nominal payments made to Herrera in 2016 and 2017 by the third entity, NEC - Port Arthur.[1]

Rule 12(e) allows a party to move for a more definite statement of a pleading when it is "so vague or ambiguous that the party cannot reasonably prepare a response." FED. R. CIV. P. 12(e). *See also Mitchell v. E-Z Way Towers, Inc.,* 269 F.2d 126, 130 (5th Cir. 1959). The United States Supreme Court has held that a Rule 12(e) motion is appropriate "[i]f a pleading fails to specify the allegations in a manner that provides sufficient notice." *Swierkiewicz v. Sorema,* 534 U.S. 506, 514 (2002). A pleading will be deemed inadequate "if it fails to (1) provide notice of the circumstances which give rise to the claim, or (2) set forth sufficient information to outline the elements of the claim or permit inferences to be drawn that these elements exist." *Beanal v. Freeport-McMoran, Inc.*, 197 F.3d 161, 164 (5th Cir. 1999).

The undisputed facts of this case, as they relate to Plaintiff's claims against Dr. Herrera, are as follows:

- NEC - Port Arthur was formed pursuant to a Series Agreement "dated to be effective as of August 1, 2015;

- Dr. Herrera executed a Series Interest Purchase Agreement on or about October 15, 2015, in which he paid $75,000 for three units of Class B shares (3% interest) in NEC - Port Arthur;

- Dr. Herrera paid $75,000 to NEC - Port Arthur in the fall of 2015;

---

[1] No payments were made to Herrera in 2018.

- According to Plaintiff's Exhibit 1, Dr. Herrera was paid less than $75,000 by NEC - Port Arthur from 2016-2018, including $0 in 2018.

Plaintiff's Third Amended Complaint conflates NEC - Port Arthur with the other debtor entities in this case in a confusing manner that is inconsistent with the above referenced undisputed facts. Paragraphs 69-71 generally allege that all of the Neighbors entities began approaching insolvency in 2014, well before NEC - Port Arthur was created. "Neighbors entered the [Altman Z Score] 'Distress' zone in which a bankruptcy would appear highly likely as early as late 2015. . . . Therefore, by the end of second quarter of 2016, these expenditures and guarantees rendered the Neighbors Defendants both insolvent as to the fair market value of their assets versus their liabilities." Third Amended Compl., Dkt. 94 at ¶70-71.

It is unclear from the allegations whether the Plaintiff is alleging that NEC - Port Arthur was "distressed" and likely to be bankrupt from its very inception toward the end of 2015, as stated in paragraphs 69 and 70, or by the end of the second quarter of 2016 as referenced in paragraph 71. This ambiguity is critical to Dr. Herrera, who was unaware of NEC Port Arthur's "distress" at the time he made his investment at the end of 2015 and received no documentation substantiating such a claim during the calendar years of 2015, 2016 and 2017.

Plaintiff's conclusory assertion that all of the Neighbor Debtor entities were insolvent is also inconsistent with statements made by the Plaintiff other adversary proceedings. Specifically, Plaintiff has acknowledged in writing that some of the Series LLCs were profitable, while others were not:

> 57. The Neighbors' O&Ds had knowledge of the finances of all of the NEC Entities owned by NHS Emergency, including knowledge that a number of those emergency centers were suffering losses and needed capital to continue operations. To provide the needed infusions of capital into these emergency centers that were experiencing financial losses, ***the Neighbors' O&Ds, in their capacity as officers and directors of Neighbors Health, caused Neighbors Health to transfer large sums of money out of***

3

> ***the bank accounts of profitable NEC Entities into the bank accounts of the other unprofitable emergency centers for no consideration.***
>
> 58. The Neighbors' O&Ds knew that they were obligated to hold and distribute each NEC Entity's net profits for their respective Series LLC owners. ***The diversion of these funds by the Neighbors' O&Ds, stripped the performing emergency centers of their profits, causing substantial damage to them in breach of the Neighbors' O&Ds fiduciary duties.***

Adv. P. No. 20-03017, Dkt. 85 at 57-58 (emphasis added).

Because the Trustee's blanket statement in this proceeding that *all* of the Neighbors Debtor Entities were insolvent when the transfers were made because the fair market value of their assets exceeded their liabilities is inconsistent with its pleadings in other proceedings, Herrera moves for a more definite statement regarding the solvency of NEC - Port Arthur. Specifically, was NEC - Port Arthur one of the "profitable" NEC entities whose profits were improperly stripped to support under-performing NEC entities? If so, when did this NEC entity became so unprofitable as to become "insolvent"?

In response to the prior motion to dismiss, Plaintiff was ordered to replead the issue of insolvency. But Plaintiff has not pled insolvency in any meaningful way that gives clarity to the allegations specific to NEC Port Arthur and Herrera's investment in same. Accordingly, Herrera requests that Plaintiff make a more definite statement regarding the insolvency of NEC Port Arthur with enough specificity for him to defend the claim against him. *See Beanal v. Freeport-McMoran, Inc.*, 197 F.3d 161 (5th Cir. 1999) (holding that a motion for more definite statement under Rule 12(e) is the proper remedy for a complaint that is ambiguous or does not contain sufficient information to allow a responsive pleading to be framed).

4

## ORIGINAL ANSWER SUBJECT TO MOTION FOR MORE DEFINITE STATEMENT

Subject to his Rule 12(e) Motion, Defendant David Herrera ("Herrera") hereby answers Plaintiff's Third Amended Complaint as follows:

### I.
### Jurisdiction and Venue

1. Admitted.

2. Admitted.

3. Without sufficient information to admit or deny, and therefore denied.

4. Does not apply to Herrera, therefore is neither admitted nor denied.

5. Admitted.

6. Admitted.

### II.
### Parties

7. Admitted.

8-40. Paragraphs 8-40 relate to parties other than Herrera, therefore are neither admitted nor denied.

41. Admitted that Herrera is a resident of the state of Texas; Herrera may be served through the undersigned counsel of record.

42-57. Paragraphs 42-57 relate to parties other than Herrera, therefore are neither admitted nor denied.

### III.
### Background Facts

58. Upon information and belief, admitted.

59. Upon information and belief, admitted.

60. Upon information and belief, admitted.

61. Without sufficient information to admit or deny, and therefore, denied.

62. Admitted that the Trustee brings the claims, denied that the claims against Herrera have any merit.

63. Upon information and belief, the first sentence is admitted. The second sentence is admitted as to Herrera and debtor entity NEC - Port Arthur, but denied as to Herrera and any of the other NEC debtor entities in this proceeding. Herrera is without sufficient information to admit or deny allegations as to the other NEC entities and the other "Transfer Defendants."

64. Denied that the NEC entities operated as a "common business enterprise," which is a phrase that has no legal definition or meaning. Without sufficient information to admit or deny the remaining allegations of paragraph 64, and therefore denied.

65. Without sufficient information to admit or deny the allegations of paragraph 65, and therefore denied.

66. Without sufficient information to admit or deny the allegations of paragraph 66, and therefore denied.

67. Without sufficient information to admit or deny the allegations of paragraph 67, and therefore denied.

68. Without sufficient information to admit or deny the allegations of paragraph 68, and therefore denied.

69. The allegations of this paragraph are subject to Herrera's motion for more definite statement. As to NEC - Port Arthur and Herrera, the allegations are denied. Herrera is without sufficient information to admit or deny the allegations of this paragraph as to other debtor entities.

70. The allegations of this paragraph are subject to Herrera's motion for more definite statement. As to NEC - Port Arthur and Herrera, the allegations are denied. Herrera is without sufficient information to admit or deny the allegations of this paragraph as to other debtor entities.

71. The allegations of this paragraph are subject to Herrera's motion for more definite statement. As to NEC - Port Arthur and Herrera, the allegations are denied. Herrera is without sufficient information to admit or deny the allegations of this paragraph as to other debtor entities.

72. As to Herrera, denied that the transfers attached as Exhibit A are recoverable by the Plaintiff. Without sufficient information to admit or deny the remaining allegations of this paragraph as to other transfer defendants or entities.

73. As to NEC - Port Arthur and Herrera, denied.

## IV.
## Claims and Causes of Action

74. Herrera repeats and incorporates by reference his responses to paragraphs 1-73 above.

75. Denied.

76. As to Herrera, denied that the transfers attached as Exhibit A are recoverable "transfers" by the Plaintiff. Without sufficient information to admit or deny the remaining allegations of this paragraph as to other transfer defendants or entities.

77. As to Herrera, denied that the transfers are recoverable by the Plaintiff "as an interest in the property" of NEC - Port Arthur. Any funds paid to Herrera were either tax distributions, profits allocations or return of capital that belonged to Herrera under applicable law. Without sufficient information to admit or deny the remaining allegations of this paragraph as to other transfer defendants or entities.

78. As to Herrera, denied. Herrera further alleges that this allegation is not brought in good faith under Rule 11 of the Federal Rules of Civil Procedure. The allegations as to Herrera are groundless, wholly without merit, and sanctionable under Federal Rules of Civil Procedure 11(b) and (c). Specifically, Plaintiff has no factual or legal basis to allege that any transfers made to Herrera in 2016 or 2017 were made for "less than reasonable equivalent value."

79. Denied as to NEC - Port Arthur and any transfers made to Herrera; without sufficient information to admit or deny as to the remaining entities and defendants.

80. As to Herrera, denied. Herrera further alleges that this allegation is not brought in good faith under Rule 11 of the Federal Rules of Civil Procedure. The allegations as to Herrera are groundless, wholly without merit, and sanctionable under Federal Rules of Civil Procedure 11(b) and (c). Specifically, Plaintiff has no factual or legal basis to allege that any transfers made to Herrera in 2016 or 2017 were "fraudulent" under law. To the contrary, the Plaintiff's allegations, if proven true, establish fraud against Herrera on the part of the debtor which more than offsets any alleged recoverable transfer.

81. This paragraph calls for a legal conclusion which is neither admitted nor denied.

82. As to Herrera, denied. Herrera further alleges that this allegation is not brought in good faith under Rule 11 of the Federal Rules of Civil Procedure. The allegations as to Herrera are groundless, wholly without merit, and sanctionable under Federal Rules of Civil Procedure 11(b) and (c). Specifically, Plaintiff has no factual or legal basis to allege that any transfers made to Herrera in 2016 or 2017 are avoidable under any provision of the Bankruptcy Code.

## V.
## Jury Demand

83. Admitted. As stated below, Herrera further requests a jury trial conducted by a United States District Court and does not consent to a trial by jury before any Bankruptcy Court or Magistrate Court.

## VI.
## Rule 7008 Statement and Jury Demand

84. Herrera asserts that the Third Amended Complaint (the "Complaint") contains non-core matters and may contain a mixture of core and non-core matters.

85. Herrera does not consent to entry of a final order by this Bankruptcy Court with respect to non-core matters.

86. Defendant has not previously filed a proof of claim in the underlying bankruptcy case.

87. Furthermore, and notwithstanding any core vs. non-core distinctions, Herrera demands a trial by jury conducted by a United States District Court and does not consent to a trial by jury before any Bankruptcy Court or Magistrate Court. *See* Seventh Amendment, U.S. CONST., *Katchen v. Landy*, 382 U.S. 323 (1966) and *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 58 (1989) (discussing right to jury trial in fraudulent transfer action).

## VII.
## Affirmative Defenses

88. NEC - Port Arthur's claims against Herrera are barred, in whole or in part, by the doctrines of waiver, estoppel, laches, limitations, fraud, and unclean hands. To the extent that Plaintiff successfully establishes that NEC - Port Arthur was "distressed," insolvent, or inevitably likely to become insolvent on the basis of documents and information that was not disclosed to Herrera at the time he invested in the entity, Herrera has a fraud in the inducement claim against NEC - Port Arthur which would more than offset any of Plaintiff's claims against him.

89. NEC - Port Arthur's claims against Herrera should be dismissed for failure to state a claim upon which relief may be granted.

90. NEC - Port Arthur's claims against Herrera should be dismissed for lack of standing. The majority of the transfers to Herrera were either (1) made prior to July 12, 2016, and are therefore not recoverable, or (2) made as tax distributions, and are admitted by Plaintiff as not recoverable. Any remaining transfers to Herrera were transfers of property not belonging to the alleged transferor, NEC - Port Arthur, which was not the owner of the funds transferred. Additionally, there is no evidence to suggest that any unsecured creditor represented by the Plaintiff had an existing claim against NEC - Port Arthur at the time any recoverable transfer was made to Herrera.

91. NEC - Port Arthur's claims against Herrera are untimely, in whole or in part, under of 11 U.S.C. § 546(a).

92. NEC - Port Arthur's claims against Herrera are barred, in whole or in part, by the doctrine of accord and satisfaction.

93. Each of the alleged recoverable transfers from any of the Neighbors Debtor Entities to Herrera was made for substantially contemporaneous exchange for new value.

94. Herrera accepted all payments in good faith and for value equaling or exceeding the amounts received.

95. For transfers made to Herrera after July 12, 2016 in which Plaintiff seeks to avoid as fraudulent, NEC - Port Arthur received reasonably equivalent value in exchange for such transfers and Herrera provided fair and reasonably equivalent value.

96. During all relevant times, NEC - Port Arthur was solvent at the time any such transfer was made to Herrera, and did not become insolvent as a result of any such transfer.

97. Transfers that were made to Herrera that are claimed to be recoverable were not made with the intent to hinder, delay, or defraud any entity or person that was or became a creditor of the transferor.

98. To the extent that Herrera is determined to be an immediate or mediate transferee of any alleged avoidable transfer, Herrera provided value, including satisfaction of an antecedent debt, in good faith, and without knowledge of the voidability of any such transfer.

99. Any claim based on an alleged transfer that constituted a "tax distribution" is barred pursuant to the Court's Order entered on November 20, 2020 (Dkt. 91).

100. Any alleged transfers to Herrera are not subject to avoidance to the extent such transfers were return of capital.

## VII.
## Rule 11 Sanctions and Counterclaim for Attorneys' Fees

101. Herrera refers to and incorporates by reference paragraphs 1-100 above.

102. Herrera asserts that the claims asserted against him are meritless, groundless and asserted without a lack of any evidentiary support in violation of Rule 11 of the Federal Rules of Civil Procedure. Accordingly, Herrera is entitled to recover his reasonable and necessary attorney's fees incurred to defend this adversary proceeding pursuant to Federal Rule of Civil Procedure 11, as well as all other applicable law including but not limited to Texas Business and Commerce Code § 24.013.

## **CONCLUSION AND PRAYER**

WHEREFORE, PREMISES CONSIDERED, Adversary Defendant David C. Herrera requests that, upon trial, Plaintiff (1) replead a more definite statement regarding insolvency; and (2) take nothing by way of its claims against Herrera. Defendant also requests recovery of his

reasonable and necessary attorneys' fees and costs incurred to defend this action, and such other and further relief as to which he may be entitled.

                              Respectfully Submitted,

                              LAW OFFICE OF SESHA KALAPATAPU

                              By: *s/ Sesha Kalapatapu*
                                    Sesha Kalapatapu
                              S.D. Tex. 24070
                              2929 Allen Parkway, Suite 200
                              Houston, TX 77019
                              Telephone:  832.398.1771
                              Fax:  713.574.4719
                              Email:  *sesha@sktexaslaw.com*

## **CERTIFICATE OF SERVICE**

     I hereby certify that a copy of the foregoing document was filed on December 31, 2020, using the court's CM/ECF system and served electronically on all persons and parties who have entered an appearance in this adversary proceeding.

                              By: *s/ Sesha Kalapatapu*
                                    Sesha Kalapatapu